# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
EMERITUS

DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN
MICHELE YANKSON

June 13, 2019

<u>*Via ECF*</u>
Hon. Joan M. Azrack
United States District Judge
100 Federal Plaza
Central Islip, NY 11722

       *Re: Volpe v. Ryder,* 19-cv-02236 (JMA)(ARL)

Dear Judge Azrack,

  We represent Plaintiff Police Officer Charles Volpe and the Police Benevolent Association of the Police Department of Nassau County ("PBA") in the above referenced matter. We write to oppose Defendants' proposed motion to dismiss Plaintiffs' 42 U.S.C. § 1983 claims pursuant to the First and Fourteenth Amendments.[1]

### *Background*

  Officer Volpe led a decorated career until a 2016 injury prevented him from returning to work. Since his injury, Defendant Police Commissioner Ryder and Defendant Officers Sacks and Massaro have engaged in a persistent campaign of harassment to force Officer Volpe back to work. When Officer Volpe complained about Defendants' actions and their failure to honor his rights under the PBA's collective-bargaining agreement, Defendants escalated their harassment, forcing Officer Volpe from his home to submit to a causeless drug test and engaging in a months-long surveillance campaign of Officer Volpe and his family (and using taxpayer funds to do so), among other threatening conduct.

  The PBA has also stood up for Officer Volpe and his rights as a PBA member, lodging numerous complaints with Defendant Commissioner Ryder. These actions have only been met with increased retaliation against the union and attempts to undermine its institutional authority.

### *Plaintiffs Have Stated a Substantive Due Process Claim*

  Officer Volpe has alleged conduct that "may fairly be said to shock the contemporary conscience. *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005). "'[M]alicious and sadistic abuses of power by government officials, intended to 'oppress or to cause injury' and designed for no

---

[1] Defendants have not contested Officer Volpe's Fourth Amendment claim.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

legitimate government purpose, 'unquestionably shock the conscience.'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). Claims of malicious abuse of government power hinge heavily on the Defendants' intent and cannot be decided at the motion to dismiss, or even summary judgment, stage. *See O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005) (reversing summary judgment grant on substantive due process claim because "whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken").

Officer Volpe has alleged that Defendants Sacks and Massaro, on Defendant Ryder's orders, came to Officer Volpe's home, forced him to police headquarters under false pretenses, and once at headquarters, forced him to submit to a drug test without cause. Making matters worse, Defendants carried out this test in the most humiliating manner imaginable, refusing Officer Volpe water and crowding multiple superior officers into a bathroom to watch him attempt to urinate. This sadistic treatment reached a crescendo when Defendants forced Officer Volpe to face an open public road and expose himself as he attempted to urinate to comply with their baseless demands. Compl. ¶¶ 17-55.

Following this drug test, it was revealed that Defendant Ryder had *installed a security camera* across the street from Officer Volpe's home for 24/7 monitoring of him and his family. *Id.* ¶ 160. Defendants' surveillance did not stop at Officer Volpe's door and they have indicated that they are monitoring Officer Volpe's lawful activity on the internet. *Id.* ¶¶ 145-148.

This conduct follows two years of Defendants' pressuring Officer Volpe's personal doctors to send him back to work (¶¶ 81-83, 118-120); tampering with independent medical assessments of Officer Volpe's injury (¶¶ 92-96, 165); intimidating Officer Volpe and his family by coming to his home without cause on his days off and demanding that he remain on house arrest (¶¶ 100, 126-127); arbitrarily denying Officer Volpe indemnification and thereby potentially subjecting him to significant legal expenses and exposure (¶¶ 92-96, 150-152); and threatening him with frivolous criminal prosecution and departmental discipline (¶ 164), all the while defaming him as a malingerer, faker, drug-dealer, wife-beater, and arsonist, among other baseless accusations. (¶¶ 88, 90, 137, 140).

Officer Volpe alleges that this "malicious and sadistic" abuse of Government power was all carried out with the intent to "oppress and cause injury" to him for refusing to return to work and asserting his rights as a union member. *Velez*, 401 F.3d at 93. His claim should proceed to discovery and trial so Plaintiff can prove Defendants' intent.[2]

### *Plaintiffs Have Stated a First Amendment Retaliation Claim*

Defendants do not deny that they have retaliated against Plaintiff but still seek dismissal of Plaintiffs' retaliation claim on the sole ground that the behavior prompting their retaliation is not protected by the First Amendment. "An employee's association with a union, as well as any speech that arises from his or her position in a union, is constitutionally protected under the First

---

[2] While Defendants argue that Plaintiff's substantive due process claim is "subsumed" by his other claims, Plaintiff's theories of liability are offered in the alternative to the extent they cover the same unlawful conduct.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

Amendment." *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 509 (E.D.N.Y. 2011) (Bianco, J.); *Buckley v. New York*, 959 F. Supp. 2d 282, 298 (E.D.N.Y. 2013) ("the Court finds that the Plaintiff's union membership satisfies the public concern requirement").

All of Officer Volpe's speech set forth in Plaintiffs' complaint derives from his association with the PBA and the rights conferred to him thereunder, including his protesting Defendants' numerous violations of the parties' collective bargaining agreement (Compl. ¶ 85) and his filing multiple grievances through the PBA for violations of his rights (¶¶ 133-135). The PBA has also protested Defendants' failure to honor the PBA's organizational rights (¶¶ 44, 88, 103, 124, 131, 135, 154, 159). These actions arising from the PBA's associational interests and speech arising thereunder are entitled to constitutional protection.[3]

Any challenge to the PBA's standing is also meritless. The Second Circuit has "repeatedly held that only a 'perceptible impairment' of an organization's activities is necessary for there to be an 'injury in fact.'" *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110 (2d Cir. 2017) (quoting *Nnebe v. Daus*, 644 F.3d 147, 157 (2d Cir. 2011)). The PBA has suffered more than a "perceptible impairment" from Defendants' retaliation—its institutional legitimacy is undermined every day that the terms of its CBA are disregarded and both the union itself and one of its members are retaliated against for asserting those collectively-bargained rights. In addition to this frustration of its mission of advancing the professional interests of its members, Compl. ¶ 12, the PBA has been forced to continually divert its resources to attempting to combat Defendants' unconstitutional conduct (¶¶ 44, 88, 103, 112, 117-124, 131, 135, 154, 159), culminating in its being forced to file this lawsuit. These actions are more than sufficient to confer standing on the PBA. *Nnebe*, 644 F.3d at 157.

***Plaintiffs Have Stated Monell Claims***

Plaintiffs have stated a claim against the County of Nassau under a theory of "policy-maker" *Monell* liability. "If the decision to adopt [a] particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004) ("even a single action by a decisionmaker who possesses final authority to establish municipal policy with respect to the action ordered is sufficient to implicate the municipality in the constitutional deprivation for the purposes of § 1983") (internal quotation marks and citation omitted). Defendant Ryder "possesses final authority to establish municipal policy" with respect to the Nassau County Police Department, and his actions ordering, or at the very least knowingly condoning, Defendants' unconstitutional drug test (Compl. ¶¶ 138-139), unlawful surveillance (¶¶ 145, 160-161), and revocation of indemnification (¶¶ 150-152), among other unlawful actions are sufficient to state a claim against the County for its Police Department's coordinated assault on Plaintiffs' rights.

---

[3] The PBA was also subject to adverse action. Defendants' continued failure to honor the rights conferred upon PBA members by virtue of their union membership constitutes retaliatory adverse action against the PBA itself.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

                                                               Respectfully Submitted,

                                                                /s/

                                                               Richard D. Emery
                                                              David Berman

cc.    All counsel of record