

**Aaron N. Solomon, Esq.**
Email: ASolomon@kdvlaw.com

Kaufman Dolowich & Voluck, LLP
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797

Telephone: 516.681.1100
Facsimile: 516.681.1101

www.kdvlaw.com

May 22, 2020

**VIA ECF**
Hon. Arlene R. Lindsay
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

Re:   <u>Volpe v. Ryder, et al., Docket No.: 19-cv-02236-JMA-ARL</u>

Dear Judge Lindsay:

As you are aware, this office represents Defendants Patrick Ryder ("Ryder"), Russell Sacks ("Sacks"), Joseph Massaro ("Massaro"), and the County of Nassau (the "County") (collectively referred to as the "Defendants") in the above-referenced matter. We submit this letter motion for a protective order preventing the disclosure of certain confidential information to preserve the confidentiality of law enforcement techniques, procedures, and personnel.

## BACKGROUND

As this Court is aware, Charles Volpe ("Volpe"), a County police officer, alleges that he has been unable to work since 2016 due to an injury. The Police Benevolent Association of the Police Department of Nassau County (the "PBA") is the collective bargaining representative for the County's police force. On January 3, 2020 Plaintiffs served their discovery requests, which included a set of document demands and interrogatories. **See Exhibit A**. Plaintiffs' requests seek the production of confidential information and documents such as Internal Affairs Unit ("IAU") investigation files, and request that Defendants disclose the identities of certain police officers within IAU that installed street surveillance cameras and reviewed video footage captured outside of Volpe's home.[1] For the reasons set forth herein, Defendants respectfully request a protective order under the law enforcement privilege preventing the disclosure of this privileged information.

## ARGUMENT

The law enforcement privilege is meant to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation and otherwise to prevent interference with an investigation." *MacNamara v. City of New York*, 249 F.R.D. 70 (S.D.N.Y. 2008). The law enforcement privilege serves to preserve the integrity of law enforcement techniques and confidential sources. *Id.* In order to assert the claim of privilege, the party seeking to avail itself of the privilege must make a showing that "there are specific harms likely to accrue from the disclosure of specific materials." *Fountain v. City of New York*, 2004

---

[1] *See* Exhibit A, Document Requests Nos. 2, 3, 8, 9, and 18; Interrogatory Nos. 3 and 4.

WL 941242 at *3, (S.D.N.Y. May 3, 2004). However, it is well established that an investigation does not need to be ongoing for harm to exist, as "the ability of law enforcement to conduct future investigations may be seriously impaired if certain information is revealed." *Nat'l. Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000).

Notably, if the privilege applies, there exists a strong presumption against lifting the privilege. *See, Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 519 (E.D.N.Y. 2011). This strong presumption can only be rebutted if the party seeking disclosure shows that the suit is non-frivolous and was brought in good faith, the information sought is not available through other discovery sources, and that there is a compelling need for the privileged information. *See, Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 519 (E.D.N.Y. 2011).

In considering whether to grant a protective order, courts must balance the interests favoring and disfavoring disclosure and consider the "value of appropriate protective orders and redactions." *See, MacNamara* at 249 F.R.D. at 79. Factors that favor non-disclosure include: "(1) the threat to police officers' safety, (2) the invasion of police officers' privacy, such as through disclosure of officers' personnel records, (3) the weakening of law enforcement programs, (4) the chilling of police internal investigative candor, and (5) chilling of citizen complainant candor." *King v. Conde*, 121 F.R.D. 180, 191 (E.D.N.Y. 1988). On the other hand, factors that favor disclosure include (1) relevance of the materials requested to the plaintiff's case, (2) the importance of the requested materials to the plaintiff's case, (3) the strength of the plaintiff's case, and (4) importance to public interest. However, the court should weigh these interests only if the strong presumption against disclosure is successfully rebutted. *Dorsett*, 762 F. Supp. 2d. at 519.

### A. Irreparable Harm to Defendants

In the instant case, a protective order is necessary to prevent harm to the Defendants because the production of the requested confidential information and documents will impair Defendants' ability to conduct its current and ongoing investigation of Volpe. Initially, it must be noted that the production of the materials requested will reveal the subject and details of the Nassau County Police Department's (the "NCPD") ongoing investigation (and potentially a criminal investigation) *directly to* the individual being investigated, namely Officer Volpe. Disclosing to Volpe the materials and evidence being used in an ongoing investigation *against him* is a complete contravention of the IAU and criminal process that will certainly cause irreparable harm to the ongoing investigation. *See, e.g. Id.* ("A more pointed menace to police effectiveness may arise if the civil rights plaintiff seeking internal police files is simultaneously (or reasonably likely to be in the future) the defendant in a criminal proceeding arising out of the incident in question.").

Moreover, because the disclosure of past and ongoing IAU files will reveal the details, and the tactics used to conduct both criminal and administrative investigations, such disclosure directly undermines the NCPD's policy of keeping IAU files confidential and will severely compromise the County's and the NCPD's ability to accurately and effectively carry out ongoing and future internal and criminal investigations.[2] Specifically, the investigative files contain information

---

[2] While the Parties have entered into a confidentiality agreement in connection with the exchange of documents, the production of the above-mentioned requested documents and information to the selected individuals under the confidentiality agreement will not suffice to prevent harm to the County and the Department.

2

regarding the chronology of witness interviews, including when civilians and other witnesses are interviewed in relation to officer interviews, notations regarding the frequency of witness contacts, including visits to witness homes, and calls to witnesses. The revelation of the investigative files may further reveal confidential information to be used in pending or future criminal proceedings, such as information on the interaction between the NCPD and the District Attorney and importantly, information regarding determinations as to whether cases rise to the level of criminality and the filing of criminal charges. Disclosure of such material to Officer Volpe and the PBA leadership (who represents the individuals who may potentially be investigated in the future) will undoubtedly negatively impact the ability of the officers assigned to the IAU to conduct investigations, thus undermining the effectiveness of the IAU.

The effectiveness of the IAU would be further harmed as the production of the requested IAU reports, especially to the PBA's leadership, will also create a chilling effect on witness cooperation. Notably, IAU reports contain the identities of witnesses, both civilian and officers, who report misconduct or cooperate with the IAU investigations. Revealing the identities of the individuals who file complaints and cooperate with IAU to Officer Volpe or PBA leadership will indubitably deter individuals from initiating complains or otherwise cooperating out of a fear of retaliation or that the informant's complaint may become the subject of an article in PBA newsletter or even a press conference. Such an injury would result in irreparable harm which could not be mitigated after the fact. Accordingly, a protective order is warranted in this case.

### B. The Confidential Information and Documents Sought by Plaintiffs Is Irrelevant to the Plaintiff's Case

The disclosure of the confidential information requested by Plaintiffs here is disproportionate to the needs of the case as it is wholly irrelevant to the Plaintiffs' claims and in no way warrants the invasion of the officers' privacy or revelation of police investigative tactics. For instance, the Defendants do not dispute that a street surveillance camera was set up outside of Volpe's house; nor do the Defendants dispute that video surveillance was captured and reviewed. Indeed, Defendants will produce video from the camera to Plaintiffs for their review. Nonetheless, for no stated reason, Plaintiffs seek the identities of the officers who merely installed the video camera. This is in no way relevant to Plaintiffs' claims and any information sought from these officers can easily be obtained through other discovery devices. Undoubtedly, the harm that flows from exposing the identity of these officers to Volpe and other officers in the PBA outweighs any need for this information.

With regard to the identities of individuals who have reviewed video footage, the mere fact that a Department employee's eyes glazed over the video footage does not mean that they possess relevant knowledge or information. Indeed, the video speaks for itself. As such, a protective order preventing the disclosure the of the requested documents and information should be issued.

Accordingly, Defendants respectfully request a protective order prohibiting the disclosure of documents concerning IAU investigations involving Volpe and striking Plaintiffs' interrogatory seeking the identities of Department employees who installed the video camera outside Volpe's home or reviewed the footage it obtained.

                          Respectfully submitted,

                          Aaron N. Solomon, Esq.
                          Monique M. Robotham, Esq.

cc: All parties via ECF