# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
MARISSA BENAVIDES
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

May 26, 2020

*Via ECF*
Hon. Arlene Lindsay
United States Magistrate Judge
100 Federal Plaza, Central Islip, NY 11722

      *Re: Volpe, et al. v. Ryder, et al.,* 19-cv-02236 (JMA)(ARL)

Dear Judge Lindsay,

  We represent Plaintiffs in the above-referenced matter. Defendants' motion for a protective order, ECF No. 41, is both procedurally improper and substantively meritless. Procedurally, Defendants have failed to meet-and-confer as required by the local rules. Substantively, the Internal Affairs documents Defendants seek to hide are critical evidence to prove Plaintiffs' claims and Defendants have not demonstrated any harm caused by disclosure.

  **I.**  ***Defendant Failed to Meet-and-Confer with Plaintiffs Prior to Bringing Their Motion***

  On April 3, 2020, Defendants filed a pre-motion letter regarding a potential motion for a protective order. ECF No. 40. Defendants did not meet-and-confer with Plaintiffs prior to filing that letter despite your Honor's rules requiring such a meeting. Defendants were granted permission to bring their motion under Local Rule 37—which also requires a "good faith effort to resolve." Not once in the intervening *seven weeks* did Defendants raise their forthcoming motion, let alone attempt to resolve it. This failure to comply with the local rules is reason alone to deny Defendants' motion or to order any other sanction the Court deems appropriate. Had a meet-and-confer occurred, the parties potentially could have narrowed their disagreement and, perhaps, agreed to procedures for *in camera* review to resolve portions of this dispute.[1]

  **II.**  ***Plaintiffs Are Entitled to the IAB Documents Defendants Seek to Withhold***

  Before addressing the merits of Defendants' motion, Plaintiffs seek to provide context regarding the role of the NCPD Internal Affairs Unit ("IAU") in this case. Plaintiff Volpe served as a police officer for fifteen years before his retirement in March 2020. Compl. ¶ 60. In October 2016, Volpe suffered an on-the-job injury to his right hand. *Id.* ¶ 66. Since that time,

---

[1] In fact, just last week the parties conferred on a motion to compel by Plaintiffs and the issues were resolved.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

Defendants have questioned Volpe's injury and have engaged in a multi-year campaign of harassment and retaliation against Plaintiffs for asserting Volpe's rights as a union member and for protesting Defendants' refusal to honor those rights. *Id.* ¶¶ 17-55, 89-166. IAU has been one of the primary tools used by Defendants to carry out their harassing and retaliatory conduct.

For example, one of the central allegations in the complaint—and the entire basis for Volpe's claim under the Fourth Amendment—is that Defendants came to Volpe's home, forced him to police headquarters, and forced him to submit to a drug test. *Id.* ¶¶ 17-55. This drug test would only be lawful if, after an investigation, IAU had found "specific articulable facts" that supported an inference of drug abuse. *Id.* ¶ 28. IAU has not offered a single fact supporting cause for an investigation, let alone a finding of drug abuse, or explained why Volpe (supposedly suspected of drug abuse) was told to drive himself to and from police headquarters. *Id.* ¶¶ 20 43-45. IAU officers have also harassed Volpe by visiting his home on multiple occasions to coercively question his wife about a years' old incident for which Volpe had already been cleared of wrongdoing, and at which his wife was not even present. *Id.* ¶¶ 54, 101-02, 138.

Defendants' use of IAU as a tool to harass Plaintiff Volpe has increased since the filing of this case. While Plaintiffs have always alleged that Defendants unlawfully surveilled Volpe's activity over the internet, *id.* ¶¶ 145-48, IAU's involvement in this harassment tactic became apparent during a January 30, 2020 interview. During that interview, IAU officers questioned Volpe about specific video games he had purchased over the internet and even about specific terms he had searched on Google related to his hand injury. Defendant Commissioner Ryder also admitted to the Plaintiff PBA that this January 30 interview was deliberately timed by IAU so that they could bring Departmental charges against Volpe before he became eligible to retire.

Plaintiffs allege and will prove that all of these actions were taken to harass Volpe and to retaliate against Plaintiffs for asserting their rights. *Id.* ¶¶ 167-189. But it is hard to imagine how Plaintiffs could prove these claims, which turn on Defendants' motivation for initiating these IAU actions and the factual bases underlying them, without the IAU files supposedly justifying these investigations. In the context of Plaintiffs' Fourth Amendment claim, *the entire claim* turns on whether IAU conducted an investigation and made the requisite findings to establish cause for a drug test. Defendants' argument that they should not have to produce *any* IAB files is effectively to argue that they should not have to defend these claims at all.

### III. *Defendants Have Not Demonstrated Any Harm Caused by Disclosure*

Defendants argue that they are entitled to invoke the law enforcement privilege because they will be "irreparably harmed" by disclosure of these files. Their arguments are based solely on misrepresentations and conclusory assertions and should be rejected.

First, Defendants claim that there is an ongoing investigation into Volpe, and that disclosing IAU files to him would provide files "directly to the individual being investigated." Defs.' Mot. at 2. But Volpe *retired* from the Department on March 2, 2020. *See* Exhibit A at 3 ¶ 1 (excerpt of response to Plaintiffs' request to admit). The Department's *Internal* Affairs Unit has *no authority* to take disciplinary action against him as he is no longer a County employee.

  While Defendants make reference to a "potential[] criminal investigation," this is a misrepresentation to the Court. Defendants followed through on their threat of referring Volpe to the County DA's office in retaliation for bringing this lawsuit (Compl. ¶ 164), but this retaliation did not bear fruit. On March 13, 2020, ADA Heather Kalachman called Plaintiffs' counsel (who also represented Volpe in the criminal investigation) to inform them that the DA's investigation was complete and no criminal charges would be filed against Volpe.

  Second, Defendants argue that disclosing these records will reveal the "details and tactics" used to conduct IAU investigations. But Defendants have not established any record—even by affidavit—of the documents' sensitivity. This is distinct from the cases Defendants cite where a factual record was submitted explaining the potential harms caused by disclosure. *See Dorsett v. Cty. of Nassau*, 762 F. Supp. 2d 500, 520 (E.D.N.Y. 2011). Even where factual support has been offered, courts have not granted the blanket order Defendants seek, but have performed a document-by-document analysis of which documents warrant protection in light of the specific harms asserted. *Goodloe v. City of New York*, 136 F. Supp. 3d 283, 295 (E.D.N.Y. 2015); *Floyd v. City of New York*, 739 F. Supp. 2d 376, 386 (S.D.N.Y. 2010).

  Moreover, the parties have entered into a confidentiality order precisely to limit the disclosure of sensitive information. ECF No. 39. While Defendants state that the IAU files divulge the chronology, frequency, and timing of witness interviews, these are hardly secretive investigatory techniques and are exactly the type of "low sensitivity" reports that favor confidential disclosure. *Floyd*, 739 F. Supp. 2d at 384. Defendants offer no explanation as to why this information is so sensitive that this order does not provide adequate protection.

  Lastly, Defendants generally assert that it could deter witness cooperation with IAU if witness identities are disclosed. But IAU has the power to compel any police officer to cooperate with an internal investigation. Defendants also do not specify whether there is even one, let alone several, witnesses inspiring this concocted concern in this case. If there is such a witness, Defendants do not address whether his privacy concerns outweigh materiality to the case, or why the existing confidentiality order is not sufficient. To the extent Defendants argue that IAU files should never be disclosed, "courts in this Circuit routinely order the production of IAB files in [§ 1983] cases." *Bridgeforth v. City of New York*, 286 F. Supp. 3d 629, 632 n.2 (S.D.N.Y. 2017).

### IV. *Plaintiffs Are Entitled to Identity Information*

  Another form of harassment against Plaintiff Volpe was the Department's *installation of a security camera* across the street from Volpe's home for many months of 24/7 monitoring of him and his family. Compl. ¶ 160. Plaintiffs have requested the identities of the persons who installed the camera and who reviewed the footage. Defendants offer no explanation for refusing to produce these names beyond stating that they are not relevant because Defendants admit that the camera was installed and the footage was reviewed. Defs.' Mot. 3.

  As with the IAU files, the relevant question is not whether these events happened, but why they happened. Plaintiffs are entitled to depose these persons to question them about who ordered them to install the camera or review and report on the footage, and what these persons understood the purpose of this constant surveillance to be.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

                                                Respectfully Submitted,

                                                    /s/

                                              Richard D. Emery
                                              David Berman

cc.    All counsel of record