UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
CHARLES VOLPE,

                            Plaintiff,

-against-

PATRICK RYDER, COMMISSIONER OF THE NASSAU
COUNTY POLICE DEPARTMENT, in his official and
Individual capacities; RUSSELL SACKS, SERGEANT IN THE
NASSAU COUNTY POLICE DEPARTMENT, in his individual
capacity; JOSEPH MASSARO, LIEUTENANT IN THE
NASSAU COUNTY POLICE DEPARTMENT, in his
Individual capacity; and COUNTY OF NASSAU,

                            Defendants.
----------------------------------------------------------------------X

Docket No.: 19-cv-02236
(JMA) (ARL)

**AMENDED
COMPLAINT**

**Jury Trial
Demanded**

Plaintiff, CHARLES VOLPE, by and through his attorneys, STEVEN F. GOLDSTEIN, LLP, as and for his Amended Complaint, respectfully alleges, upon information and belief, as follows:

## **PRELIMINARY STATEMENT**

1. Plaintiff, Charles Volpe, was forced out of his house under false pretenses and forced to submit to a lawless drug test.

2. These actions have violated Officer Volpe's Constitutional protections under the Fourth Amendment, as they were a violation of the defendants' contractual drug testing policy.

3. This civil rights action seeks damages for an unconstitutional drug test as violation of the Fourth Amendment.

## **JURISDICTION AND VENUE**

4. This Court has original jurisdiction over Plaintiff's federal law claims under 28 U.S.C. §§ 1331, 1343.

1

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

6. Plaintiff demands a trial by jury in this action.

## PARTIES

7. Plaintiff Charles Volpe is a Nassau County Police Officer. He has been a Police Officer for nineteen years and has been on the Nassau County police force since 2004.

8. Defendant Patrick Ryder is the Commissioner of the Nassau County Police Department (the "Department"). He is sued in his official and individual capacity.

9. Defendant Russel Sacks is a Sergeant in the Medical Administration Office of the Department. He is sued in his individual capacity.

10. Defendant Joseph Massaro is a Lieutenant in the Medical Administration Office of the Department. He is sued in his individual capacity.

11. Defendant County of Nassau (the "County") is a county in the State of New York.

## FACTS

12. Officer Volpe was subjected to an unconstitutional and humiliating involuntary drug test in which Officer Volpe was forced to urinate in a cup in front of an open window facing a public road while multiple supervising officers looked on and mocked him.

13. On December 11, 2018 at approximately 4:40 p.m., Defendants Massaro and Sacks arrived unannounced at Officer Volpe's home.

14. Despite the fact that these officers were purportedly investigating whether Officer Volpe was using illegal drugs, Defendants Massaro and Sacks immediately demanded that Officer Volpe get in his car, drive it, and follow them to police headquarters. Officer Volpe

2

was out on disability leave at that time with a hand injury, and the Defendants falsely represented that he needed to come to police headquarters for a "medical evaluation" by the Department Surgeon.

15. The timing of this visit was suspicious and unexpected. Officer Volpe had been given no notice of this supposed medical evaluation beforehand.

16. Per standard protocol for Police Officers on disability leave, Officer Volpe had to remain at his home from 9:00 a.m. to 5:00 p.m. on all days he would otherwise be working. This 4:40 p.m. demand all but assured Office Volpe would remain under the Department's supervision beyond the designated 5:00 p.m. conclusion of his mandated time of confinement.

17. While waiting for Officer Volpe to get ready, the Officers rang the doorbell to his home over and over, deliberately disturbing Officer Volpe's wife and children. Defendants Sacks and Massaro also screamed at Officer Volpe for not being ready to leave on a moment's notice, deliberately causing a disturbance in his household and making his family fearful. The Officers' truculent behavior left Officer Volpe's wife visibly upset and all three of his young children crying.

18. Despite Defendants' rude conduct towards his family and inexplicable timing for their visit, Officer Volpe complied with the Officers and got in the car to follow them to headquarters.

19. On his way to police headquarters, Officer Volpe called Dean Losquadro, 2nd Vice President of the PBA, to inform him he was ordered to headquarters. 2nd Vice President Losquadro agreed to meet Office Volpe there.

20. Once Officer Volpe arrived, Defendants changed course, disregarding the original purported basis for dragging Officer Volpe from his home (to have his hand examined) and demanded that Officer Volpe submit to a urine test for drugs.

21. Under the Police Commissioner's Order 8-95, entitled "Employee Drug Testing Procedures," and incorporated into the parties' Collective Bargaining Agreement ("CBA") an Officer may only be drug tested 1) based on reasonable suspicion of drug abuse; or 2) pursuant to the random testing procedures set forth in the CBA.

22. If an officer is to be tested due to a reasonable suspicion of drug abuse, very specific procedures, not followed in this instance, documenting the basis for that suspicion must be followed. First, the "reasonable suspicion" determination must be based on "specific articulable facts" that allow a reasonable inference of drug abuse. These "specific facts" must be presented to the Department's Internal Affairs Unit for investigation. The Internal Affairs Unit then must prepare a report of its findings for the officer's Division Chief. Only then, after an Internal Affairs investigation and a finding by a Division Chief of "specific articulable facts" supporting an inference of drug abuse, may an officer be tested "for cause."

23. Upon learning of the true reason Officer Volpe was ordered to headquarters, 2nd Vice President Losquadro inquired whether Officer Volpe was selected randomly (an unlikely possibility given the strange timing of the test and the false pretenses used to get him to headquarters) or if he was being tested "for cause."

24. Defendants Sacks and Massaro responded that the test was "for cause."

25. When questioned as to what the "cause" for the test was and whether appropriate procedures had been followed, Defendants Sacks and Massaro refused to provide any basis for the

test. They did not articulate a single fact supporting the test or give any indication that the Internal Affairs Unit or a Division Chief had made the required factual findings.

26. Nonetheless, the Defendants ordered that this unconstitutional search move forward over Officer Volpe and 2nd Vice President Losqaudro's objections.

27. But the Defendants were not satisfied only violating Officer Volpe's constitutional rights—they then proceeded to actively humiliate him.

28. Despite explicit provisions in the CBA banning the Department from making pre-drug test inquiries into whether an officer has been prescribed any medications, Defendant Massaro immediately asked Officer Volpe whether he had received any prescriptions—a blatant violation of Officer Volpe's contractually protected privacy.

29. Officer Volpe was, at that time, dehydrated and was having difficulty urinating. After being informed by Officer Volpe that he needed to drink water, Defendants limited his access to water, in blatant violation of a prior arbitration order on that very subject.

30. Defendant Massaro then falsely accused Officer Volpe of spitting into one of the cups he was attempting to urinate into. Defendant Massaro rummaged through the garbage cans in the bathroom to retrieve already-discarded cups to investigate them for saliva. Defendant Massaro continuously threatened that he was going to have lab testing done on the (already-discarded) cups.

31. Despite his continuing threats based on non-existent spitting (both Defendants Massaro and Sacks and 2nd Vice-President Losquadro were in the bathroom with Officer Volpe at all times) Defendant Massaro refused to articulate why the contents of a cup that was no longer being used bore any relevance to Officer Volpe's drug test. This conduct was meant solely to harass and intimidate Officer Volpe.

5

32. The Defendants' conduct only grew more brazen as Officer Volpe struggled, and the Defendants continued to call additional officers, including supervising officers, into the bathroom to watch Officer Volpe attempt to urinate.

33. As the test dragged on, Defendant Massaro's bizarre misconduct continued. With no explanation whatsoever, Defendant Massaro ordered Officer Volpe to face an open window, looking out onto a main county road as he attempted to urinate.

34. While forcing Officer Volpe to publicly expose himself to an open road, Defendant Massaro made mocking comments about Officer Volpe's genitals to the other officers present.

35. There has been and is no explanation for this conduct beyond a sadistic desire to humiliate Office Volpe.

36. Once the test was finally complete, Officer Volpe was ordered, at 7:30 p.m. (almost three hours after he had been removed from his home), to report to the Police Surgeon to have his hand examined.

37. Officer Volpe was then released to drive himself home. This was the second time that evening that, despite supposedly possessing sufficient evidence of drug abuse to warrant a drug test for cause, Defendants ordered Officer Volpe to operate an automobile on the public roads.

38. The PBA has sent three letters to Defendant Commissioner Ryder regarding this unconstitutional search and brazenly unprofessional conduct. The PBA has received no response beyond a vague promise to investigate the matter.

39. To this day, not a single specific fact has been articulated regarding this forced drug test and it is increasingly apparent that none of the procedures that would justify such a test were followed.

40. The Department's post-test conduct has only reinforced the lack of any reasonable suspicion that Officer Volpe is a drug abuser.

41. The test occurred over three months ago, yet neither Officer Volpe nor the PBA has received the results. They have been told that the test was "positive," but the Department has refused to show Officer Volpe the results or even orally inform him what he tested positive for.

42. This conduct is entirely consistent with the fiction that the Department had reason to believe one of its employees is abusing drugs and could thereby be a danger to himself and the public at large.

43. This refusal to disclose the results of the test is even more suspicious because it is in express contravention of the CBA, which requires that any police officer who tests positive for drugs is notified in person and has the right to: 1) have his urine retested by a private, certified laboratory, 2) have an interview regarding the positive test, and 3) be given the opportunity to submit a letter explaining the reason for the positive finding and documenting any prescriptions.

44. Officer Volpe has never taken illegal drugs or prescription drugs without medical authorization. Officer Volpe does, however, take a handful of medically authorized prescription drugs to treat long-standing medical conditions. To the extent there was any positive test, it was likely caused by these lawful prescriptions. Yet, with the Department refusing to disclose the results and move forward with the process, Officer Volpe is unable to provide the appropriate medical documentation that would explain any positive test.

45. Defendants falsely claimed that Officer Volpe masturbated in the cup he was supposed to be urinating in during the test. Defendants Massaro, and Sacks and 2nd Vice President Losquadro were in the bathroom with Officer Volpe for the duration of his test and it is obvious this conduct did not occur.

46. Office Volpe is a forty-one-year-old New Yorker who has devoted his entire professional career to protecting the citizens of his state.

47. Officer Volpe grew up in Staten Island, New York and entered the Police Academy in the 2000 after graduating on the Dean's List from St. John's University.

48. After three months on the traffic task force, Officer Volpe was put on patrol in the Chinatown and Little Italy neighborhoods of lower Manhattan.

49. He remained on patrol until 2003, when he was selected to join the Commissioner's Office of Mapping and Planning.

50. In 2004, Officer Volpe was offered a job on the County police force. The County's pay and benefits far exceed those available to New York City police officers and, as a result, the County police force is one of the most competitive police forces to join in the region, if not the country.

51. Representatives from the PBA estimate approximately 5% of officers who apply for jobs with the County police force are hired.

52. Officer Volpe left the New York City Police Department with no complaints to the Internal Affairs Bureau or Civilian Complaint Review Board to his name. His interviewers with the County police force remarked many times that they rarely saw any applicants coming from New York City with such a pristine record.

53. Once in the County, Officer Volpe was assigned to the Fifth Precinct, and then later to the Second Precinct, where he continued his exemplary police work from 2004-2016.

54. Officer Volpe was recognized as the "Top Cop" of the month five times and received an additional "meritorious award" for his handling of an armed robbery of a car dealership in September 2014.

55. Officer Volpe has never faced any disciplinary actions from the Department during his thirteen years on the force.

56. The Department did not comply with department policy or any of the CBA rules governing drug tests for cause.

## CLAIM FOR RELIEF

### (Fourth Amendment Unlawful Search and Seizure: 42 U.S.C. § 1983)

57. Plaintiff Volpe restates and incorporates by reference the preceding paragraphs above as if fully set forth herein.

58. Defendants at all times acted under color of New York State law.

59. On December 11, 2018, Defendants unlawfully seized Officer Volpe under false pretenses and forced him to submit to a drug test in violation of the Fourth Amendment to the United States Constitution.

60. Officer Volpe did not consent to this search.

61. The search was unaccompanied by any warrant, probable cause, or reasonable suspicion.

62. The search was beyond of the scope of the Fourth Amendment protections relinquished by virtue of Department policy and the CBA.

63. Defendant Ryder is a policy-making official for the County of Nassau and made the decision to force Officer Volpe to submit to an unconstitutional drug test.

64. Defendants' conduct was willful, intentional, and in reckless disregard of Plaintiff's civil rights.

65. By virtue of the foregoing, Defendants are liable for having substantially caused the foregoing violations of Plaintiff's Constitutional rights and, as a direct and proximate result of Defendants' unlawful conduct, Plaintiff Volpe has sustained damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, CHARLES VOLPE, respectfully requests judgment against Defendants as follows:

a. Compensatory damages in an amount to be determined;

b. Punitive damages;

c. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just and proper.

Dated: Carle Place, New York
March 1, 2021

Yours, etc.

STEVEN F. GOLDSTEIN, LLP

BY: GINA M. ARNEDOS (4821)
*Attorneys for Plaintiff*
CHARLES VOLPE
One Old Country Road – Suite 318
Carle Place, New York  11514
(516) 873-0011

TO: KAUFMAN, DOLOWICH, VOLUCK & GONZO, LLP
*Attorneys for Defendants*
PATRICK RYDER, COMMISSIONER OF THE NASSAU COUNTY POLICE DEPARTMENT, in his official and Individual capacities; RUSSELL SACKS, SERGEANT IN THE NASSAU COUNTY POLICE DEPARTMENT, in his individual capacity; JOSEPH MASSARO, LIEUTENANT IN THE NASSAU COUNTY POLICE DEPARTMENT, in his Individual capacity; and COUNTY OF NASSAU
135 Crossways Park Drive - Suite 201
Woodbury, New York 11797
(516) 681-1100

<u>Via e-mail:</u>

Aaron Solomon - asolomon@kdvlaw.com
Monique Robotham - mrobotham@kdvlaw.com
Edward Grimmett - egrimmett@kdvlaw.com

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK     )
                                        ) SS.:
COUNTY OF NASSAU    )

LORRAINE EGAN, being duly sworn, deposes and says:

That deponent is not a party to the action, is over 18 years of age, and resides in the State of New York.

That on the 1ST day of March, 2021 deponent served the within **AMENDED COMPLAINT** upon:

KAUFMAN, DOLOWICH, VOLUCK & GONZO, LLP
*Attorneys for Defendants*
    PATRICK RYDER, COMMISSIONER OF THE NASSAU
    COUNTY POLICE DEPARTMENT, in his official and
    Individual capacities; RUSSELL SACKS, SERGEANT IN
    THE NASSAU COUNTY POLICE DEPARTMENT, in his
    individual capacity; JOSEPH MASSARO, LIEUTENANT IN
    THE NASSAU COUNTY POLICE DEPARTMENT, in his
    Individual capacity; and COUNTY OF NASSAU
135 Crossways Park Drive - Suite 201
Woodbury, New York 11797
(516) 681-1100

via e-mail by using the below e-mails provided by Defendants for that purpose:

    Aaron Solomon - asolomon@kdvlaw.com
    Monique Robotham - mrobotham@kdvlaw.com
    Edward Grimmett - egrimmett@kdvlaw.com

                                                  LORRAINE EGAN

Sworn to before me this
1ST day of March, 2021

_____
Notary Public

GINA M. ARNEDOS
Notary Public, State of New York
Registration No. 02AR6157128
Qualified in Nassau County
Commission Expires 12/04/2022

12