UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHARLES VOLPE,

                Plaintiffs,

                            **DECISION AND ORDER**
     -against-                      19-cv-02236 (JMA)(JMW)

PATRICK RYDER, COMMISSIONER OF THE NASSAU
COUNTY POLICE DEPARTMENT, in his official and
individual capacities; RUSSELL SACKS, SERGEANT IN THE
NASSAU COUNTY POLICE DEPARTMENT, in his individual
capacity, JOSEPH MASSARO, LIEUTENANT IN THE
NASSAU COUNTY POLICE DEPARTMENT, in his
individual capacity; and COUNTY OF NASSAU,

                Defendants.
-------------------------------------------------------------------X

**A P P E A R A N C E S:**

Gina M. Arnedos
Stephen F. Goldstein
**Stephen F. Goldstein, LLP**
One Old Country Road, Suite 318
Carle Place, NY 11514
*For Plaintiff Charles Volpe*

Matthew J. Mehnert
Richard K. Zuckerman
**Lamb & Barnosky, LLP**
534 Broadhollow Road
Melville, NY 11747
*For Defendants Patrick Ryder, et al.*

**WICKS,** Magistrate Judge:

      Before the Court is Plaintiff Charles Volpe's motion for sanctions seeking to strike

Defendants Patrick Ryder, Russell Sacks, Joseph Massaro, and the County of Nassau's answer

for their failures to comply with a Court order and to otherwise satisfy discovery their

obligations. (DE 105.) Defendants oppose. (DE 107.) On August 16, 2022, an in-person

1

hearing on the issue was held before the undersigned. For the reasons set forth below, the Court grants the motion for sanctions, but concludes that striking Defendants' answer and entering default is not warranted under the circumstances, but that lesser sanctions, in the form of costs and attorney's fees associated with bringing the motion, are justified and appropriate. Therefore, Plaintiff's motion is GRANTED in part, and DENIED in part.

## I. FACTUAL AND RELEVANT PROCEDURAL BACKGROUND

Plaintiff alleges one claim against Defendants for unlawful search and seizure. (DE 82.)[1] Plaintiff, a police officer on disability leave alleges, *inter alia*, that fellow police officers came to his home, forced him to come to the police station, and subjected him to a urine-drug test as they watched. (*Id.*)

Originally, Defendants were represented by Kaufman Dolowich & Voluck, but on May 6, 2021, Defendants changed attorneys to Brian M. Libert of the Nassau County Attorney's Office. (DE 86.) Shortly thereafter, on May 19, 2022, Defendants once again changed attorneys to Lamb and Barnosky, LLC. (DE 87.)

On May 25, 2021, the case was reassigned to the undersigned, and, on August 2, 2021, a status conference was held setting dates to finalize discovery. (DE 89.) The first extension of discovery since being assigned the case was granted on November 10, 2021, and was marked as the final extension. (Electronic Order, dated Nov. 10, 2021.) A second extension was given when, at the parties' request, the final pretrial conference was converted to a status conference.

---

[1] Originally, the action was commenced by both Plaintiff and the Police Benevolent Association of the Police Department of Nassau County asserting three causes of action against Defendants: (1) substantive due process violation (on behalf of Volpe only); and (2) First Amendment retaliation (on behalf of all Plaintiffs); (3) Fourth Amendment unlawful search and seizure (on behalf of Volpe only). (DE 1.) Defendants moved to partially dismiss, which was granted, and the Benevolent Association withdrew from the action. (DE 33; 74.) The parties then stipulated to permit Plaintiff—now just Volpe—to file an amended pleading. (DE 81.) Plaintiff filed his Amended Complaint on March 2, 2021. (DE 82.)

2

(DE 98-99.) At the converted status conference, held on April 8, 2021, the parties first raised the issue concerning the exchange of emails and text messages belonging to Commissioner Ryder. (*Id.*) In short, the parties explained that Plaintiff demanded all of Commissioner Ryder's emails and text messages from the date of Plaintiff's on-the-job injury up to and including the date of the drug test because it is Plaintiff's position that Commissioner Ryder waged a campaign against Plaintiff, culminating in the drug test at issue. (*See id.*; *see* DE 82.) Defense counsel took the position that only texts and emails specifically related to the drug test are relevant and discoverable. During the conference, it was discovered that there were only approximately 140 emails at issue, so defense counsel was directed to review the universe of emails and text messages and produce any responsive messages and create and serve Plaintiff with a log categorizing any which have been withheld, providing a description of the grounds to do so. (DE 99.) Defense counsel represented that he was going to similarly look into the number text messages at issue. The parties were instructed by the Court to proceed with the deposition of Commissioner Ryder. (*Id.*)

On May 13, 2022, the parties filed a status report indicating the emails had been reviewed and produced, but Defendants were still in the process of obtaining the relevant text messages. (DE 100.) The deposition of Commissioner Ryder had not been taken. (*Id.*) Another status conference was held on May 18, 2022, at which the parties requested a <u>third extension</u> of the time to complete discovery, which was granted.

On June 30, 2022, Defendants wrote the Court advising that "due to circumstances beyond [their] control" they were unable to schedule a date for Commissioner Ryder's deposition. As to the text messages, Defendants stated that the County located the "physical device in question" (*i.e.* the cell phone), copied the text messages, and were "in the process of

3

producing same to Plaintiff's counsel." (DE 102.)  The parties asked for a fourth extension of discovery, which was granted.  (DE 103.)

Finally, on August 1, 2022, Plaintiff filed a letter motion to strike Defendants' Answer for failure to comply with a Court order and to satisfy discovery obligations pursuant to the Court's order.[2]  (DE 105.)  According to Plaintiff, on July 21, 2022—four days before Commissioner Ryder's scheduled deposition on July 25, 2022—Plaintiff received a flash drive from Defendants that did not include any text messages but instead "documentation reflecting steps taken by the NCPD with regard to searches performed to locate text messages. . . which yielded no results." (DE 105.)  Further, Plaintiff indicated it had reason to believe that during the relevant time period, Commissioner Ryder had two cell phones: personal and business.  (*Id.*)  Plaintiff did not go forward with Commissioner Ryder' deposition.  (*Id.*)  Based on Defendants' failure to produce the text messages, Plaintiff requests that Defendants' answer be stricken, and a default judgment entered.

On August 12, 2022, Defendants opposed.  (DE 107.)  Defendants concede that "there is no dispute that the Defendants' response to the request for the production of text messages was delayed." (*Id.*)  Defendants attributed some of this delay to Defendants' confusion regarding the location of the cell phone as well as whether a search had been previously conducted during prior counsel's representation of Defendants.  (*Id.*)  Nonetheless, Defendants posit that a response has been given and, thus, sanctions are not warranted.  (*Id.*)  Defendants argue that Plaintiff should have proceeded with the July 25th deposition and, because he chose not to do so, he should not be permitted to take Commissioner Ryder's deposition now.  (*Id.*)

---

[2] Plaintiff is requesting that the Court strike the answer of all Defendants.  Plaintiff, however, provides no basis to sanction the other three defendants (Russel Sacks, Joseph Massaro, and the County of Nassau). Any delay in the production of Commissioner Ryder's text messages or the scheduling of his deposition lies solely at the feet of Commissioner Ryder.

Shortly thereafter, on August 16, 2022, an in-person hearing was held regarding the issue. (DE 108.) The Court heard argument by both parties. (*Id.*) At the conclusion of the hearing, the Court ordered the following: (1) Defendants to produce to the Court a copy of the flash drive containing the search reports as it was produced to Plaintiff on or before August 19, 2022, for the Court's review; (2) the individual from the Nassau County Police Department's Electronics Squad who conducted the search on Defendant Commissioner Ryder's cell phone to appear for a deposition to be taken by Plaintiff on or before September 2, 2022; (3) Defendant Commissioner Ryder to appear for a full-day deposition to be taken by Plaintiff on or before September 15, 2022, with the deposition taking place in the course of one day; and (4) Defendant Commissioner Ryder to file a sworn statement, either by Affidavit or Declaration, attesting to whether his personal cell phone has ever been used for work-related purposes or not, on or before August 22, 2022. In compliance with the Court's August 16 Order, Defendant Commissioner filed an affidavit attesting that at all relevant times he had a cell phone issued to him in his capacity as a member of the Nassau County Police Department ("NCPD") but did not have a personal cell phone. (DE 109.)

## II.  DISCUSSION

Rule 16 of the Federal Rules of Civil Procedure authorizes the imposition of sanctions— including those authorized by Rule 37(b)(2)(A)(ii)-(vii)— when a party fails to appear at a court-ordered conference or fails to comply with other pretrial orders. Fed. R. Civ. P. 16(f); *see Rahman v. Red Chili Indian Café, Inc.*, 17-CV-5156 (RA) (BCM), 2019 WL 6619893, at *3 (S.D.N.Y. July 12, 2019). In such circumstances, the Rules authorize sanctions in the form of "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi). Courts look to several factors when

5

considering the appropriate sanction, including "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-complaint party had been warned of the consequences of . . . noncompliance." *Sanchez v. Jyp Foods Inc.*, 16-CV-4472 (JLC), 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).

Typically, "a single pretrial violation, such as [a] party's failure to respond to a document request by the date ordered, would not ordinarily result in an imposition of a sanction of such finality as striking defendants' answer and entering judgment by default." *U.S. Freight Co. v. Penn Cent. Transp. Co.*, 716 F.2d 954, 954 (2d Cir. 1983) (citation omitted). However, it is well within the court's discretion to impose such harsher sanctions where a defendant exhibits a "continuing saga of dilatory conduct," and where that party has had notice of the orders with which they failed to comply, paired with "an opportunity to argue [their] case against the proposed sanction." *Id.*; *see Rahman*, 2019 WL 6619893 at *3.

The Court has a panoply of options available once it is determined that discovery sanctions are warranted. "Rule 37 provides a district court with a wide range of sanctions which it may apply to a wide range of circumstances -- potential sanctions extend from payment of expenses and similar monetary sanctions at one end of the spectrum to default judgment on the other." *Abante Rooter & Plumbing, Inc. v. Shore Funding Sols., Inc.*, No. CV176499 (ADS)(AKT), 2019 WL 2436239, at *5 (E.D.N.Y. Mar. 6, 2019), *report and recommendation adopted*, No. 217CV06499 (ADS)(AKT), 2019 WL 1986606 (E.D.N.Y. May 6, 2019). The sanction of striking a defendant's answer and entering a default is a severe sanction and is only appropriate "in the most extreme cases." *Id.* Often, when a party has exhibited misconduct that

6

warrants sanctioning, but the misconduct is not as offensive as to warrant striking of the answer and entering default, courts will impose other, less draconian sanctions. *See e.g.*, *Abante Rooter & Plumbing, Inc.* 2019 WL 2436239, at *6. ("[T]he Court concludes that a default judgment as a sanction under Rule 37 would not be appropriate in the instant circumstances. However…in the absence of any justification for [Defendant's] conduct, it is clear to the Court that some form of sanction under Rule 37 is appropriate"); *In re The 1031 Tax Grp., LLC*, No. ADV. 09-01215 (MG), 2010 WL 2851300, *6 (Bankr. S.D.N.Y. July 16, 2010) ("Although the Court concludes that Hartsdale has acted willfully and in bad faith, it declines to strike Hartsdale's Answer and enter a default judgment. Nevertheless, Hartsdale's conduct merits very strong sanctions"); *Airlines Reporting Corp. v. Grecian Travel, Inc.*, 170 F.R.D. 351 (E.D.N.Y. 1995) ("Here, [Defendant's] actions do not quite reach the level where such extreme sanctions should be imposed. . . [Defendant's] dilatory behavior warrants an order compelling discovery").

There can be no dispute that there has been dilatory misconduct on behalf of Defendants. Indeed, Defendants concede that they are responsible for delay. (DE 107.) The parties began discovery in September 2019, but it wasn't until nearly three years later that the parties first brought the issue concerning Commissioner Ryder's emails and text messages to the Court's attention. (*See* DE 29, 99.) At that point multiple discovery extensions had been granted, a warning had been issued that the previous extension was "final," and the final pre-trial conference had to be adjourned to accommodate this discovery issue. Defense counsel made representations to the Court and to Plaintiff that he was looking into the text messages and in May 2022 was in the process of obtaining the relevant text messages. (DE 100.)[3] In June, 2022,

---

[3] Plaintiff's counsel made it a point to inform the Court that defense counsel has been diligent in his attempts to obtain compliance by his client NCPD (on behalf of Ryder) to obtain the Commissioner's text messages. (DE 105 at 2.) Plaintiff states that counsel has regularly given updates to the undersigned as to his attempts. (*Id.*)

7

defense counsel again represented to the Court that "[d]ue to circumstances beyond [Defendants'] control" Commissioner Ryder's deposition was still in the process of being scheduled but Commissioner Ryder's cell phone had been located, the text messages copied, and Defendants were "in the process of producing same to Plaintiff's counsel." (DE 102.)[4] After months of assurances, Defendants finally produced, on July 21, 2022—only four days before Commissioner Ryder's scheduled deposition—a flash drive containing not a single text message. (DE 105.) Plaintiff argues that the deposition of Commissioner Ryder could not, and therefore did not, go forward without the production of these text messages. (*Id.*) The Court finds that such conduct is grounds for imposing sanctions.

However, Plaintiff has not established that Defendants' non-compliance has been entirely willful. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Ali*, 2021 WL 5999203, at *11. Based on defense counsel's representations to the Court during conferences and in status reports, it appears that Defendants were making efforts to obtain the text messages requested by Plaintiff. Indeed, defense counsel kept Plaintiff's counsel updated as to his efforts to obtain and produce the text messages. (DE 105.) Defense counsel states that there was confusion about the location of the cell phone from prior counsel and there were delays by the Department's Electronics Squad in searching the cell phone because of other pressing investigations. (DE 107; Tr. at 5:24-25; 6:1-4.) Discovery foot-dragging, like what occurred here, standing alone does not give rise to a finding of willfulness. Especially considering no prior motion to compel was brought by

---

[4] Even when describing the timeline of events to the Court, defense counsel begrudgingly admitted the search of Commissioner Ryder's cell phone was "not as fast as I would have liked. . ." (Transcript of Hearing ("Tr."), dated August 16, 2022, at 5:24-25; 6:1-4.)

Plaintiff, it is likely that lesser sanctions would be effective. *See Abante*, 2019 WL 2436239 at *7.

The Court also considers that although the production was not what Plaintiff had hoped, and it was certainly delayed, Defendants did ultimately respond to Plaintiff's request.[5] Plaintiff also could have proceeded with Commissioner Ryder's deposition and sought relief from the Court in the form of an additional, limited deposition, if text messages were later produced.[6] While Plaintiff is skeptical as to the veracity of the production—indicating that defense counsel represented all along that the text messages exist, and they simply needed to be located from predecessor counsel and that Commissioner Ryder may have had a second cell phone—this skepticism is insufficient to warrant the harsh sanctions Plaintiff seeks. *See Ali v. Dainese USA, Inc.*, No. 19 CIV. 2422 (KPF), 2021 WL 5999203, at *14 (S.D.N.Y. Dec. 17, 2021) (ordering less severe sanctions even where "as Defendants suggest, there remains reason to be skeptical that Plaintiff has in fact produced all the discoverable documents in her possession").

As it relates to a search for text messages on Commissioner Ryder's personal cell phone, in order to require search and production of those text messages, some evidence that Commissioner Ryder used his personal cell phone for work or work-related texts is required. *See La Belle v. Barclays Cap. Inc.*, 340 F.R.D. 74, 84 (S.D.N.Y. 2022) ("Accordingly, we find that

---

[5] Plaintiff maintains that the files contained on the flash drive are indecipherable (DE 105; Tr. at 7:23-25.) The Court does not share the same sentiment. Upon the Court's review of the flash drive files, it appears to contain photos of the phone that was searched (including photos demonstrating the phone belonged to Commissioner Ryder and that it was password protected) and, just as defense counsel described, screenshots of each search that was performed for a designated search term ("Charles," "Charlie," "drugs," "test," "testing," and "Volpe"). (*See* Tr. at 8:10-16.) Interestingly, although the time period which the parties determined was relevant is from October 2016 through the end of 2018, the photos demonstrate that the earliest text messages contained on the cell phone are from January 2021.

[6] Plaintiff's counsel admitted during the hearing that "in hindsight" Commissioner Ryder's deposition could have gone forward with Commissioner Ryder subject to recall. (Tr. at 11:15-23.)

9

the duty to search for messages on [Supervisors'] personal cellphones did not arise until there was some indication that evidence relevant to plaintiff's claims was contained on the personal devices of those employees.") And so, at the August 16th hearing, Commissioner Ryder was ordered to submit a sworn statement, either by affidavit or declaration, attesting to whether his personal cell phone has ever been used for work-related purposes or not, on or before August 22, 2022. (Electronic Order, Dated Aug. 16, 2022.) On August 22, 2022, Commissioner Ryder filed an affidavit stating he in fact does not have a personal cell phone and did not have a personal cell phone at the time of the events relevant to this case.[7] (DE 109 ¶¶ 4, 5.) Defendant Ryder further states that he has not used a personal cell phone to discuss events relevant to this case and has not used a personal cell phone to conduct department-related business. (*Id.* at ¶¶ 6, 7.) There does not appear to be evidence that Defendant Ryder used a personal cell phone at all, let alone for work purposes. (*See* DE 109.)

In light of the above, the Court having carefully considered the appropriate sanction, will order one less severe than the striking of an answer. *See Abusikin v. City of New York*, No. 18-CV-4582 (ATK) (NF), 2020 WL 3547773, at *7 (S.D.N.Y. May 27, 2020), *report and recommendation adopted*, No. 18CIV4582 (ATK)(NF), 2020 WL 3546882 (S.D.N.Y. June 30, 2020) (awarding a monetary sanction, rather than dismissal, where plaintiff conceded he did not comply with the Court's order but had a reasonable explanation as to why); *see also Abante Rooter & Plumbing, Inc.* 2019 WL 2436239, at *6 (recommending a monetary sanction, in the

---

[7] Notably, Defendants did not originally state that Commissioner Ryder did not have a personal cell phone in their opposition, but rather argued that a search of text messages on his personal cell phone would be "immaterial" because there is no evidence he conducted business on his personal device. (DE 107.) Further, Defense counsel was asked during the hearing whether Commissioner Ryder had a personal cell phone to which he responded, "I believe he does, yes." (Tr. at 9:14-15.) The Court cannot help but wonder whether this exercise could have avoided altogether, or at least expedited, by a simple conversation between counsel and client.

10

form of reimbursement of fees expended and costs incurred, rather than dismissal, where Defendant did not meaningfully participate in discovery). Here, due to the repeated and inexplicable delays at the hands of the Defendants after extensions of discovery deadlines had been marked final, the Court finds that lesser sanctions in the form of costs and attorney's fees associated with bringing the motion to be appropriate.

### III. CONCLUSION

Based on the foregoing, Plaintiff's motion for sanctions seeking to strike Defendants' answer and for a default judgment is hereby denied in part; granted in part. The Court finds that lesser sanctions should be imposed in the form of costs and attorney's fees associated with bringing the motion. Plaintiff is directed to file proof of costs and fees associated with the making of the motion on or before September 30, 2022, unless the parties beforehand reach agreement on the costs and fees.

Dated: Central Islip, New York
September 19, 2022

**S O   O R D E R E D:**

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge