# EXHIBIT E

# In the Matter Of:

## VOLPE vs RYDER

19-cv-02236(JMA)(ARL)

## COMMISSIONER PATRICK RYDER

*September 13, 2022*



800.211.DEPO (3376)
EsquireSolutions.com

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF NEW YORK

 3    ----------------------------------------------------------

 4

 5    CHARLES VOLPE,

 6                           Plaintiff,

 7         vs.                      No. 19-cv-02236(JMA)(ARL)

 8    PATRICK RYDER, COMMISSIONER OF THE NASSAU
      COUNTY POLICE DEPARTMENT, in his official and
 9    Individual capacities; RUSSELL SACKS, SERGEANT IN
      THE NASSAU COUNTY POLICE DEPARTMENT, in his
10    individual capacity; JOSEPH MASSARO, LIEUTENANT IN
      THE NASSAU COUNTY POLICE DEPARTMENT, in his
11    Individual capacity; and COUNTY OF NASSAU,

12                           Defendants.

13    ----------------------------------------------------------

14

15

16         VIDEOCONFERENCE DEPOSITION of COMMISSIONER

17    PATRICK RYDER, taken on September 13, 2022, at 9:05

18    A.M., in MINEOLA, NEW YORK, before Maggie Czwakiel,

19    Digital Reporter and Notary public of the State of New

20    York.

21

22

23

24

25
```



1                    APPEARANCES OF COUNSEL

2

3   On behalf of the Plaintiff:

4        STEVEN F. GOLDSTEIN, LLP
         Attorneys at Law
5        1 Old Country Road
         Suite 318
6        Carle Place, New York 11514
         516-873-0011
7        BY:  GINA MARIE ARNEDOS, ESQUIRE

8

9
    On behalf of the Defendants:
10
         LAMB & BARNOSKY, LLP
11       Attorneys at Law
         534 Broadhollow Road
12       Suite 210
         Melville, New York 11747
13       631-694-2300
         BY:  MATTHEW J. MEHNERT, ESQUIRE
14

15
    Also Present:
16
           Charles Volpe, Plaintiff
17

18

19

20

21

22

23

24

25



1                COMMISSIONER PATRICK RYDER
2      A.   He is counsel for the commissioner.  That's
3  correct.
4      Q.   Okay.  All right.  No problem.  Commissioner,
5  are you employed?
6      A.   Yes.  I am.
7      Q.   By whom?
8      A.   Nassau County.
9      Q.   Are you employed by the county or Nassau
10 County PD?
11     A.   Well, we're all employed by the county.  But
12 I work for the police department.
13     Q.   Okay.  And how long have you been employed by
14 the police department?
15     A.   I am with the Nassau County Police Department
16 37 years.
17     Q.   And where's your office located?
18     A.   I am at 1490 Franklin Avenue.
19     Q.   Okay.  And what was your rank when you first
20 joined the Nassau County PD?
21     A.   As a recruit, and then you become a police
22 officer when you graduate the Academy.
23     Q.   And how long were you a police officer?
24     A.   Seventeen years.
25     Q.   And then were you promoted?



1                COMMISSIONER PATRICK RYDER
2        A.   But they're investigators like anybody else
3    in the department.  They run their own investigations.
4        Q.   Okay.  And in 2016 to 2018, was there
5    essentially a CO of that unit?
6        A.   There's always a CO of the unit.  Yes.
7        Q.   And who was that back then?
8        A.   I believe it's Lieutenant Massaro.
9        Q.   Okay.  Do you know what other officers were
10   I'll say on staff at MAO during that time period?
11       A.   I believe Sergeant Sacks.  And I don't recall
12   the other people.
13       Q.   That's fine.  As part of your oversight of
14   MAO, do you direct them to bring in officers for
15   either random or for-cause drug test?  Or is that
16   decision made at that level?
17       A.   No.  Most drug test, when it's a random drug
18   test, it's done by a machine.  I have no knowledge
19   what -- how it gets picked.  And once they -- they
20   call people in, I don't even know who they call.  It's
21   done --
22       Q.   Okay.  All right.  What about what's been
23   determined as a for-cause drug test?
24       A.   If -- when it's a for-cause, they
25   will -- they will bring it to my attention that they



1               COMMISSIONER PATRICK RYDER
2    have a member that they're going to bring in
3    for-cause.  They will explain to me what the cause is.
4    And I said, okay.  If it fits the parameters, go right
5    ahead.
6         Q.  What are the parameters?
7         A.  I'm not really sure.  It -- they'll
8    -- they'll explain the parameters to me.  But
9    they -- they usually look for a couple of incidents
10   that concern them on why.
11        Example, if we've had cases where someone said,
12   my husband is abusing steroids or using steroids, that
13   would be enough for us to bring someone in to testing.
14        In any other, if it was cause one given by
15   somebody from outside or from -- from internal, they
16   gather that together and they look and say, look, we
17   have for -- a reason to bring this person in.  We have
18   cause to believe that they may be abusing some type of
19   substance.  And then they would go ahead and bring
20   that person in.
21        Q.  Okay.  And would you be apprised of the
22   results of a for-cause drug test?
23        A.  Yes.  I would.
24        Q.  When an officer is brought in for a for-cause
25   drug test, is it customary to have a DNA test done?



1                COMMISSIONER PATRICK RYDER
2        A.   No.  It's not.
3        Q.   Under what circumstances would -- withdrawn.
4        Are there any circumstances that would lead MAO
5   to conduct a DNA test?
6             MR. MEHNERT:  Just note my objection for the
7   record.  But the witness can answer.
8             THE WITNESS:  I -- again, I am not the expert
9   in MAO.
10  BY MS. ARNEDOS:
11       Q.   Understood.
12       A.   My -- and when it's brought to my knowledge
13  that they're bringing someone in, they approve the
14  test.  The test gets submitted.  Results get sent
15  back.
16       Q.   Okay.  Do you know who -- withdrawn.
17       When an officer is notified -- withdrawn.
18       Who would notify an officer that they were being
19  brought in for a random drug test?
20       A.   That would be the office of medical
21  evaluations.
22       Q.   Do you know who in particular?
23       A.   It depends on who -- who's these -- could be
24  one of the sergeants or the lieutenant himself.
25       Q.   Okay.  What about for-cause drug tests?



1                COMMISSIONER PATRICK RYDER
2  Would that be the same chain?
3        A.  I believe so.  Yes.
4        Q.  Okay.
5        A.  It's whoever has the investigation.
6        Q.  Okay.  To your knowledge, was Officer Charles
7  Volpe brought in for a drug test in 2018?
8        A.  Yes.  He was.
9        Q.  And do you know if that was random or
10 for-cause?
11       A.  That was for-cause.
12       Q.  And were you apprised of the reason that he
13 was being brought in?
14       A.  Yes.  I was.
15       Q.  And who were you given that information by?
16       A.  I believe it was at the time Chief Sewell.
17       Q.  And what did Chief Sewell tell you about
18 that?
19       A.  That they wanted to bring Mr. Volpe in
20 for-cause to test him because they believed he was
21 abusing a substance.
22       Q.  And did they tell you what substance they
23 believed he was abusing?
24       A.  No.  They did not.
25       Q.  Did they tell you the basis for their belief?



1           COMMISSIONER PATRICK RYDER

2    A.  Yes.

3    Q.  And what was that?

4    A.  There was three separate incidents.  One,
5  where he went to visit the surgeon and said he
6  couldn't move his hand.  Had restrictions on
7  his -- the -- the hand that was suffering from the
8  carpal tunnel.

9    And at that same day, he went outside to his
10  vehicle and was witnessed by another surgeon of using
11  the hand that he said he couldn't move, rolling up
12  paper and putting it into the car.  That was the first
13  incident.

14    The second incident was at a 207-c hearing, where
15  at the time Chief Walsh was moderating.  Mr. Volpe
16  came in.  He was sweating profusely.  His eyes were
17  sunken in his head.  And Chief Walsh stopped the
18  207-c, came back to me and says, look, we can't go
19  forward.  He's not a, you know -- he doesn't look
20  healthy.  Something's wrong with him.

21    And then another one was when he went to the
22  surgeon, and I think it was Surgeon Worhum at the
23  time.  And he reported what he was taking.  And the
24  amount of pills that he was taking she felt was way
25  above the prescribed amount that anybody should be



1                  COMMISSIONER PATRICK RYDER
2    taking.
3         And at that time she -- all three of those
4    situations together were brought in to my attention.
5    And they said, we believe we have cause, and we'd like
6    to test him.  And I said, if that's what we do, then
7    we can move forward.
8         Q.  Okay.  Question, if the surgeon in the last
9    instance thought that Officer Volpe was taking more
10   than he should have been of a prescribed medication,
11   did she see the prescription?
12        A.  I can't answer that.
13        Q.  Okay.  How is it that her belief would be
14   grounds unless she saw what his doctor prescribed and
15   determined that he was taking more?
16             MR. MEHNERT:  Just note my objection for the
17   record.  But the witness can answer.
18             THE WITNESS:  I believe she -- if I remember
19   correctly, she was told what -- what he was taking by
20   Mr. Volpe.
21   BY MS. ARNEDOS:
22        Q.  But did he tell her what the prescribed
23   dosage was?  Or did he just tell her what he was
24   taking --
25        A.  I can't answer that.



1           COMMISSIONER PATRICK RYDER
2      Q.   That's fine.
3      A.   That they brought him in for the test.  He
4 had stepped into a stall to -- to urinate into the
5 cup, the sample cup that we normally give them.  They
6 heard him making a sound as that they believe he was
7 spitting into the cup.
8      At that point, they -- they opened the stall
9 door.  Mr. Volpe threw the cup into the garbage.  They
10 retrieved the cup, and then they brought in two
11 additional witnesses for him to then give the urine
12 sample.
13     Q.   Okay.  Who were the two additional
14 individuals?
15     A.   So at that time it was -- again, I believe it
16 was two sergeants that came from internal affairs came
17 up.  And it was an additional sergeant and Lieutenant
18 Massaro.  So it was Lieutenant Massaro and three
19 supervisors.  I don't know the -- the names.
20     Q.   Do you know why the two sergeants from
21 internal affairs were brought into the bathroom?
22     A.   Yes.  Because of the incident with the cup
23 being discarded and his alleged attempt to be spitting
24 into the cup to contaminate the sample.  So they
25 wanted a witness to be present as they gave the



1			COMMISSIONER PATRICK RYDER
2		Q.   Okay.  Now, if I told you that there's been
3	testimony that Officer Volpe was made to urinate
4	facing the window, would you have any awareness of
5	that?
6		A.   The ledge, that where the stall is next to,
7	which is where the window is, is where all the samples
8	get placed.  When you finish, they seal them at that
9	window.  The window is a completely fogged out window.
10	You can't see in or see out.  And you know,
11	it's -- it's normal.  That's where we place the cups.
12		Q.   Okay.  Thank you.  But what I was asking was,
13	would it surprise you that there was testimony that
14	Officer Volpe was made to urinate facing the window?
15		A.   I can't answer that.  I don't -- you're
16	asking me for an opinion, would it surprise me?
17	I -- I mean, we -- we treat all of our officers with
18	professionalism and they get tested as needed.
19		Q.   To your knowledge, was Dean Losquadro in the
20	restroom at that time?
21		A.   Yes.  He was.
22		Q.   And was he there as Officer Volpe's union
23	rep?
24		A.   That is correct.
25		Q.   Okay.  What is his rank?



1   DEPOSITION ERRATA SHEET

2   Our Assignment No. J8636676

3   Case Caption: CHARLES VOLPE vs. PATRICK RYDER,

4   COMMISSIONER OF THE NASSAU COUNTY POLICE DEPARTMENT,

5   in his official and Individual capacities; RUSSELL

6   SACKS, SERGEANT IN THE NASSAU COUNTY POLICE

7   DEPARTMENT, in his individual capacity; JOSEPH

8   MASSARO, LIEUTENANT IN THE NASSAU COUNTY POLICE

9   DEPARTMENT, in his Individual capacity; and COUNTY OF
10  NASSAU
11           DECLARATION UNDER PENALTY OF PERJURY
12
13        I declare under penalty of perjury that I
14  have read the entire transcript of my deposition taken
15  in the above-captioned matter or the same has been
16  read to me, and the same is true and accurate, save
17  and except for changes and/or corrections, if any, as
18  indicated by me on the DEPOSITION ERRATA SHEET hereof,
19  with the understanding that I offer these changes as
20  if still under oath.
21
22     Signed on the _____ day of _____, 20___.
23
24            _____
25            COMMISSIONER PATRICK RYDER



1                REPORTER'S CERTIFICATE

2

3     I, MAGGIE CZWAKIEL, a Digital Reporter and Notary

4  Public within and for the State of New York do hereby

5  certify:

6

7     That the foregoing witness was duly sworn; that

8  the proceeding took place before me at the time and

9  place herein set forth; that the testimony and
10 proceedings were accurately was captured with
11 annotations by me during the proceeding.
12
13     I further certify that I am not related to any of
14 the parties to this action by blood or marriage, and
15 that I am in no way interested in the outcome of this
16 matter.
17
18     In witness thereof, I have hereunto set my hand
19 this 27th September, 2022.
20
21
22  _____
23  MAGGIE CZWAKIEL
24  Notary Commission No. 01CZ6433201
25  Commission Expires:  May 16, 2026



1                TRANSCRIBER'S CERTIFICATE

2

3         I, Monica Morgan, legal transcriptionist, do

4  hereby certify:

5         That the foregoing is a complete and accurate

6  transcript of the original digital audio recording of

7  the testimony and proceedings captured in the above

8  entitled matter.  As the transcriptionist, I have

9  reviewed and transcribed the entirety of the
10 proceeding to ensure a verbatim record to the best of
11 my ability.
12         I further certify that I am not neither
13 attorney for, nor a relative or employee of any of the
14 parties to the action; further, that I am not a
15 relative or employee of any attorney employed by the
16 parties hereto, nor financially or otherwise
17 interested in the outcome of this matter.
18         In witness thereof, I have hereunto set my
19 hand this 27th September, 2022.
20                  
21        _____
22                Monica Morgan
23                Legal Transcriber
24
25