# EXHIBIT J

*Drug Testing*

# COMMISSIONER'S PROCEDURAL ORDER

Order No.: 8-95

| EMPLOYEE DRUG TESTING PROCEDURES | | |
|---|---|---|
| DATE ISSUED 08/02/95 | TIME AND DATE EFFECTIVE 0001 AUGUST 2, 1995 | PAGE 1 of 12 |

## I. EMPLOYEE DRUG TESTING PROCEDURES

**POLICY:** On a daily basis we are reminded that drug abuse is affecting virtually every segment of our society. There is no age, social or economic group, occupation or community that has been immune from the effects of this worldwide crisis.

The ramifications of this problem are often manifested in ways that threaten even the reasonable expectations associated with everyday routine activities.

Although not perceived to be a pervasive problem within this Department, the safety of our personnel and the need for the continued confidence of the communities we serve, require that we address the issue.

Accordingly, the purpose of this Order, which results from a desire to ensure both the continued well-being of our members and the professional reputation we have earned, is to formalize a Department policy which does not condone the abuse of any substance capable of impairing the ability of employees to perform their duties.

**DEFINITIONS:** **Drug** - The term "Drug" shall include controlled substances, as defined in section 220.00(5) of the Penal Law, State of New York and marihuana, as defined in section 220.00(6).

**Drug Abuse** - The term "Drug Abuse" shall include the use of a controlled substance or marihuana, which has not been legally prescribed and/or dispensed, and the improper or excessive use of a legally prescribed drug.

CONFIDENTIAL

**Reasonable Suspicion** - Reasonable Suspicion that a member is abusing drugs exists when objective facts and observations are brought to the attention of a Superior Officer and based upon the reliability and weight of such information he/she can reasonably infer or suspect that a member of the Department is abusing drugs. Reasonable Suspicion must be supported by specific articulatable facts which may include, but are not limited to: reports and observations of the member's drug related activities, i.e., purchase, sale or possession of drugs, associations with known drug dealers or users, observations of the member at known drug related locations, etc.; an otherwise unexplained change in the member's behavior or work performance; and observed impairment of the member's ability to perform his duties.

**DRUG SCREENING:** In order to investigate and detect the use of illegal drugs and the abuse of otherwise legal drugs by members of the Force the following drug testing procedures will become effective immediately. The administration of drug screening tests to detect the presence of drugs in members of the Department will be performed in the following instances:

a) Testing Applicants,

b) Testing of Probationary Police Officers,

c) Testing based upon Reasonable Suspicion of Drug Abuse,

d) Testing of members of the Force requesting assignment to the Narcotics Bureau, Scientific Investigation Bureau, and special narcotics enforcement and,

e) Random, Periodic Testing of Members of the Force.

1. <u>Testing of Applicants</u>

The Applicant Investigation Bureau, in conjunction with the Nassau County Civil Service Commission, shall conduct drug screening for each applicant for the positions of Police Officer, Ambulance Medical Technician, School Crossing Guard and other classifications as directed by the Commissioner of Police.

2. **Testing of Probationary Police Officers**

   The Medical Administration Office shall be responsible for the administration of drug screening tests for Police Officers prior to the completion of the probationary period. Such tests will be randomly scheduled. The frequency of such tests shall be as directed by the Commissioner of Police.

3. **Testing Based Upon Reasonable Suspicion of Drug Abuse**

   Whenever any member of the Department obtains information or suspects that another member of the Force or Department may be abusing drugs they shall immediately notify their Commanding Officer. The Commanding Officer shall forthwith notify the Internal Affairs Unit. The Internal Affairs Unit will investigate all such reports to determine if reasonable suspicion exists that a member is abusing drugs and will prepare a report. Upon completion of an investigation, if reasonable suspicion exists, the Internal Affairs Unit will contact the suspected member's Division Chief, report the findings of the investigation and obtain approval for a drug screening test. Approval of the appropriate Division Chief must be obtained prior to the administration of any drug test. If the Division Chief is not available, approval may be obtained from the Chief of Operations, a Deputy Commissioner of Police or the Commissioner of Police.

4. **Testing of Members Requesting Assignment to Narcotics Bureau, special narcotics enforcement and the Scientific Investigation Bureau**

   All members requesting assignment to the Narcotics Bureau, special narcotics enforcement and the Scientific Investigation Bureau will be required to submit to a drug screening test as a condition of such assignment. Upon requesting such assignment, each member will complete and sign a form acknowledging that drug screening will be administered prior to such assignment. The Medical Administration Office shall be responsible for the administration of drug screening tests for members requesting assignment to such commands.

5. **Random, Periodic Testing of Members of the Force**

   Members of the Force (other than those on probation) shall be divided into two groups for purposes of this order:

**Group One Members** - Members assigned to the Narcotics Bureau, the Scientific Investigation Bureau, and special narcotics enforcement.

**Group Two Members** - Members not assigned to the Narcotics Bureau, the Scientific Investigation Bureau, or special narcotics enforcement.

a) **Group One Members** currently so assigned shall be required to complete and sign a form acknowledging that drug screening will be administered on a random basis within the pool of Group One Members, as a condition of continuing such assignment. If a member currently assigned declines to sign such acknowledgment, such member will be immediately transferred from such command. Such transfer shall not be deemed negative in any way.

All members requesting assignment to the Narcotics Bureau, the Scientific Investigation Bureau or special narcotics enforcement shall be required to complete and sign a form acknowledging that drug screening will be administered on a random basis within the pool of Group One Members, as a condition to commencing and continuing such assignment. A member declining to sign such acknowledgment shall be considered not qualified for the assignment.

All Group One Members shall be subject to drug screening administered on a random basis within the pool of Group One Members. No more than two and one-half percent (2 1/2 %) of the total number of Group One Members shall be subjected to random basis drug screening during any calendar month.

The Medical Administration Office shall be responsible for the administration of random drug screening tests for Group One Members.

b) All members of the Force who have completed their probationary term shall be deemed to be Group Two Members for purposes of this Order (other than Group One Members as described above, during the period of their assignment to the Narcotics Bureau, the Scientific Investigation Bureau, or special narcotics enforcement.)

All Group Two Members shall be subject to random basis drug screening. No more than two and one-half percent (2 1/2%) of the total number of Group Two Members shall be subjected to random basis drug screening during any calendar month.

The Medical Administration Office shall be responsible for the administration of random drug screening tests for Group Two Members.

**REFUSAL TO SUBMIT:** The refusal by a member of the Force to submit to a drug screening test pursuant to provisions of this Order will result in immediate suspension and will result in subsequent disciplinary action which may include dismissal from the Department.

**RESULTS OF DRUG SCREENING TESTS:** Members of the Force (not applicants for employment) will be notified of the results of all drug screening tests at the earliest appropriate time (to be determined based upon the particular facts and circumstances). Those test results which do not indicate the presence of a drug will be sealed and forwarded to the Office of Commissioner of Police. In such cases there will be no indication of drug testing in the member's Force Record or Personnel File and all records of drug screening tests will not be unsealed without the written approval of the Commissioner of Police. In the event records are required to be released outside the Department the member will be notified as soon as practicable, and prior to the release if possible.

## II. IMPLEMENTATION OF DRUG TESTING

The following procedures shall be utilized for the administration of drug screening tests for:

a) Probationary Police Officers,

       b)     Testing based upon Reasonable Suspicion of Drug Use,

       c)     Testing of members of the Force requesting assignment to the Narcotics Bureau, Scientific Investigation Bureau, and special narcotics enforcement, and

       d)     Random, Periodic Testing,

The administration of drug screening tests for applicants shall continue to be administered by the Applicant Investigation Bureau utilizing procedures currently in effect.

**TESTING PROCEDURES:**

1. All drug screening collection procedures will be directly supervised by a Superior Officer.

2. Each member of the Department being tested shall present his or her shield and identification card (PDCN Form 214) at the test location to insure proper identification.

3. Each member of the Department being tested may consult with and be accompanied by a representative of his Collective Bargaining Association. The Association representative may confer with and advise the member before and after the collection process, but shall not participate in the process in any way, except as an observer. The collection process will not be delayed because the Association representative is unable to be present.

4. Prior to testing each member shall complete PDCN Form 242 (Employee Drug Testing Questionnaire) listing all medications (prescribed and over-the-counter) ingested during the preceding 72 hours.

5. The integrity of the collection process will be maintained with the utmost consideration of the privacy of the person being tested. Only a person of the same sex as the person being tested, shall be present during collection. The Superior Officer monitoring the test will observe the collection of the sample.

6. Prior to testing, two separate containers, supplied by the testing lab shall be prepared for each member being tested. Each container shall have affixed a code number and the date of collection. The code numbers shall be recorded by the Superior Officer administering the test, together with the member's name and signature. The specimen shall be divided into two samples at the time of collection and shall be sealed in the presence of the member being tested.

7. The Superior Officer administering the test shall assure that the appropriate chain of custody is established in order to verify the identity of each sample being tested.

8. Testing will be performed by a laboratory licensed or certified by the New York State Department of Health. One sample for each member being tested shall be delivered to such laboratory. The second sample will be preserved and safeguarded by the Medical Administration Office pending the results of the initial screening.

9. Initial screening will be by Enzyme Multiple Immunoassay Testing (EMIT). No sample will be further tested upon a negative screening for controlled substances or marihuana. After a negative screening, the second sample will be destroyed.

10. Each and every positive EMIT test will be confirmed using a Gas Chromatography - Mass Spectrometry test. Only if confirmed will a test result in a positive report.

11. All samples will be tested at the New York State Department of Health specified levels of detection. The level of detection for drugs not regulated therein (i.e., barbiturates, methadone, methaqualone, propoxyphene and benzodiazepines) shall be 0.3 micrograms per ml.

12. Any member whose test results in a positive report may, within 10 days of receiving notification of such result, request, in writing to the Commissioner of Police, that the second sample be made available for retesting at a licensed or certified laboratory of the member's choosing. The Department will deliver the sample to such laboratory to assure the chain of custody. The member requesting retesting will be responsible for all costs and expenses in connection with the retesting. However, if a County Contract is outstanding and available to the Department for the laboratory chosen for retesting, the member may request that the county bear the cost of the initial and confirmation screening only of the second sample.

13. Selection of members to be tested on a random basis shall be performed by a computer program which will randomly select the serial numbers of those to be tested. The random selection of a member will <u>not</u> result in that member's serial number being removed from such selection process. Any member randomly selected will be ordered to report during the first available tour of duty. Members will not be given any advance notice of randomly scheduled tests. Members selected will be tested within the calendar month of selection. The list of members selected will be made available for inspection by the appropriate Collective Bargaining Association after all selected members have been notified of their selection for testing.

---

***POSITIVE TEST RESULTS:***     Any test resulting in a positive report will be referred to the Internal Affairs Unit for a complete investigation. Upon completion of such investigation, if it is found that a member has used a controlled substance or marihuana, which has not been legally prescribed and/or dispensed, or has abused a legally prescribed drug, a Report of

Violation of Rules and Regulations (PDCN Form 209) shall be prepared. Upon service of PDCN Form 209 the member, against whom such report has been made, shall receive a copy of the laboratory test results.

*REHABILITATION:*

In the event a police officer shall be of the opinion that he or she has a substance abuse problem, such officer shall be permitted to utilize his or her personal sick leave or other authorized leave to secure professional assistance for this problem, under the following conditions:

1. At the time notification is made to the Nassau County Police Department that such assistance is sought by the member -

    (a) an investigation into drug abuse as defined above must not have been commenced (regardless of such member's knowledge or lack of knowledge regarding such investigation),

    (b) selection of such member for a drug screening test pursuant to the terms of this Order must not have occurred,

    (c) such member must have satisfactorily completed his or her probationary period.

2. The Employee Assistance Office of the Nassau County Police Department shall be authorized to approve and monitor the member's participation in the professional assistance program selected. The member shall execute and deliver to said Office appropriate Authorizations and Releases to facilitate such monitoring of the member's participation and completion of the program.

3. Except as otherwise provided herein, no disciplinary action or investigation shall be commenced regarding the substance abuse problem for which authorized assistance hereunder is sought. However, appropriate disciplinary action may be commenced concerning any violation of law by the member, or any other violation of the Rules and Regulations of the Police Department of the County of Nassau.

4. In no event shall sick leave hereunder extend for more than one calendar year. All professional assistance sought must result in rehabilitation within one year of the commencement of sick leave utilized for this purpose.

5. The Employee Assistance Office shall review the progress of a member during his or her period of assistance as herein provided. In order to return from sick leave, such Office must concur that the member has successfully completed his or her assistance program.

6. A member signing on sick leave hereunder shall be placed on restricted assignment before such leave commences and shall surrender his or her firearms and all Police Department property and equipment until such member is returned to full duty by the Police Surgeon.

7. During sick leave hereunder, the member shall comply with Department directives as in the case of all members on sick leave.

8. A member shall be entitled to the benefits of this rehabilitation procedure only <u>one time</u>. In no event shall a member be permitted to seek rehabilitation for substance abuse more than once during the period of his or her employment as a member of the Force.

9. A member securing professional assistance hereunder shall execute a written agreement as prepared by the Nassau County Police Department, within 30 days of the commencement of the personal sick leave provided hereunder, whereby the member:

   (a) Acknowledges being informed of, and agrees to, the provisions of paragraphs 1 through 9 of this rehabilitation procedure.

   (b) Acknowledges and agrees that in the event the assistance program is not satisfactorily completed and rehabilitation has not been accomplished within one year of commencement of sick leave a Report of Violation of the Rules and Regulation (PDCN 209) may be prepared and served upon the member alleging a violation of Article 6, Rule 2, Subdivision 3 of the Rules and Regulations.

   (c) Acknowledges and agrees that during and upon completion of the assistance program (for the time periods specified below), he or she will be subject to drug screening by the Department, without prior notice, at any time and frequency, at the sole discretion of the Nassau County Police Department, without the necessity of reasonable suspicion or cause, and in addition to drug screening pursuant to any of the provisions of this Order, for the following periods of time:

      1. Satisfactory completion of program - for five (5) years after such completion.

9. A member securing professional assistance hereunder shall execute a written agreement as prepared by the Nassau County Police Department, within 30 days of the commencement of the personal sick leave provided hereunder, whereby the member:

    (a) Acknowledges being informed of, and agrees to, the provisions of paragraphs 1 through 9 of this rehabilitation procedure.

    (b) Acknowledges and agrees that in the event the assistance program is not satisfactorily completed and rehabilitation has not been accomplished within one year of commencement of sick leave a Report of Violation of the Rules and Regulation (PDCN 209) may be prepared and served upon the member alleging a violation of Article 6, Rule 2, Subdivision 3 of the Rules and Regulations.

    (c) Acknowledges and agrees that during and upon completion of the assistance program (for the time periods specified below), he or she will be subject to drug screening by the Department, without prior notice, at any time and frequency, at the sole discretion of the Nassau County Police Department, without the necessity of reasonable suspicion or cause, and in addition to drug screening pursuant to any of the provisions of this Order, for the following periods of time:

        1. Satisfactory completion of program - for five (5) years after such completion.

2. Failure to satisfactorily complete the program - for seven (7) years after program termination. Nothing herein, however, will be deemed to limit any disciplinary penalty properly imposed for a violation of the Rules and Regulations, brought pursuant to subdivision 9(b), above.

Donald F. Kane
Commissioner of Police

DFK:RB:lv

*Drug Testing ADD ON*

MEMORANDUM OF AGREEMENT made this __4__ day of __December__, 1997 by and between the **COUNTY OF NASSAU**, a Municipal Corporation having its principal place of business at One West Street, Mineola, New York 11501 (hereinafter "County") and the **POLICE BENEVOLENT ASSOCIATION OF THE NASSAU COUNTY POLICE DEPARTMENT**, County of Nassau, an employee organization having its principal place of business at 89 East Jericho Turnpike, Mineola, New York 11501 (hereinafter "PBA").

WITNESSETH:

WHEREAS, the County is a public employer as defined in the New York State Civil Service Law; and

WHEREAS, the PBA is an employee organization as defined in said law; and

WHEREAS, the parties have been theretofore entered into a Collective Bargaining Agreement, which remains in full force and effect unless modified by the arbitration award dated August 29, 1997;

NOW, THEREFORE, it is agreed by and between the parties as follows:

1. Commissioner's Order 8-95, dated August 2, 1995, shall be amended as follows:

   a. Testing Procedures shall be amended as follows:

   Add to Step 6, (page 7 of 12): They shall be immediately placed in a locked freezer which shall have the capability of freezing the specimens to ensure the integrity of the samples.

   Add to Step 7, (page 7 of 12): All Police Department samples shall thereafter be delivered to the lab no less than two times in a calendar week.

   Add to Step 8, (page 7 of 12): Any change in the lab used by the Police Department must be accomplished only with the consent of the affected employee organization.

CONFIDENTIAL

Modify Step 12, Line 2, (page 8 of 12) as follows: delete "10 days" and replace with "48 hours."

    b.    Positive test results, (page 8 and 9 of 12), shall be amended by adding the following: In the event a positive test is reported on the first sample, as provided for in Step 10 of Testing Procedures, that member shall be immediately placed on restricted assignment and must surrender all firearms to a Police Department supervising officer. In the event the second sample is tested in accordance with Step 12 of Testing Procedures and is confirmed as positive, the member will be immediately suspended and subject to disciplinary charges. In the event the second sample is confirmed as negative, the member will be immediately returned to the employment status held prior to the Testing Procedures.

    c.    The remaining portion of Commissioner's Order 8-95 not changed shall remain in full force and effect.

    d.    The Department retains the authority to test any remaining portion of the sample. This will not affect any part of the above agreement. The Department will provide the PBA with all information and copies of written documentation resulting from these additional tests.

_____
FOR THE PBA

_____
FOR THE COUNTY

_____
FOR THE POLICE DEPARTMENT

## Agreement Regarding Changes to Employee Drug Testing Procedures

Stipulation of Settlement and Memorandum of Agreement ("Agreement") made this 31 day of December 2013, by and between the County of Nassau, a municipal corporation in the State of New York, having its principal place of business at 1550 Franklin Avenue, Mineola, New York, 11501 (hereinafter called "County") and the Police Benevolent Association of the Police Department, County of Nassau, N.Y., Inc., an employee organization having its principal place of business at 89 East Jericho Turnpike, Mineola, New York, 11501 (hereinafter called "PBA").

WHEREAS, the County and the PBA entered into various agreements and understandings regarding drug testing procedures as they apply to PBA unit members; and

WHEREAS, Nassau County Police Department ("NCPD") Commissioner's Procedural Order No. 8-95, as amended and/or modified by agreement of the parties, provides for "Employee Drug Testing Procedures" (Order No. 8-95); and

WHEREAS, a dispute arose over certain aspects of Order No. 8-95; and

WHEREAS, the parties seek to clarify and/or modify certain aspects of Order No. 8-95, and desire to memorialize such clarification and/or modification in writing.

NOW, THEREFORE it is hereby agreed by and between the parties as follows:

1. The County / NCPD (collectively, the "Employer") shall make no pre-testing inquiry regarding employee medications (prescribed and over-the-counter). Accordingly, Section 4 of the "Testing Procedures" (set forth on page 6 of Order No. 8-95) is hereby deleted.

2. The Employer shall make no inquiry regarding employee drug or medication use (prescribed and over-the-counter) subsequent to the EMIT test nor shall the Employer make any such inquiry prior to the administration of the Gas Chromatography – Mass Spectrometry ("GCMS") test.

3. If an employee's EMIT test is negative, the Employer may make no post-testing inquiry whatsoever regarding the employee's drug and/or medication use (prescribed and over-the-counter).

4. If an employee's EMIT test is positive but his/her GCMS test is negative, the Employer may make no inquiry whatsoever regarding the employee's drug and/or medication use (prescribed and over-the-counter).

5. If an employee's EMIT test and GCMS tests are positive, then the Employer may direct the employee to identify all over-the-counter drugs and may direct the employee to ask his/her physician(s) for a list of all

1

**CONFIDENTIAL**

PL00000428

medications he/she is currently being prescribed that would give positive readings on the GCMS test and/or would produce metabolites that would give positive readings on the GCMS test. The employee shall then provide all such information to the NCPD. The Employer shall take all steps necessary to maintain the confidentiality of that information.

6. This Agreement is subject to and shall become effective upon PBA ratification.

7. The individuals that execute this document expressly assert that they have the agency and authority to bind the party they represent, the County or the PBA, subject to the express provisions as set forth above.

For the County:                                    For the PBA:

_____                            _____

**CONFIDENTIAL**                                                                 PL00000429